# IN THE UNTED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **STEVEN CROMIE, TANISHA TUTSON, and RUTHY HARRIS,** individually and on behalf of all similarly situated individuals, | )<br>)<br>) Case No.<br>) |
| Plaintiffs, | ) JURY TRIAL DEMANDED |
| v. | )<br>) |
| **ALLSTATE INSURANCE COMPANY,** an Illinois insurance company, | )<br>)<br>) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs Steven Cromie, Tanisha Tutson, and Ruthy Harris bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Allstate Insurance Company ("Allstate" or "Defendant") under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA" or the "Act") to: (1) stop Defendant's practice of placing (either directly or via its telemarketing agents) calls using "an artificial or prerecorded voice" to the telephones of consumers nationwide without their prior express consent, (2) enjoin Defendant from continuing to place prerecorded telephone calls to consumers who did not provide their prior express consent to receive them, and (3) obtain redress for all persons injured by its conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Allstate is an insurance agency offering insurance products and services to

consumers nationwide.

2.      Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its products and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated making of unsolicited prerecorded phone calls to consumers' telephones without consent and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

3.      Allstate's telemarketing vendors, acting on Allstate's behalf and for its benefit, called persons repeatedly using a prerecorded voice and without first securing prior express consent.

4.      By making these prerecorded calls, Defendant and/or its telemarketing vendors caused Plaintiffs and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such prerecorded calls, in addition to the wear and tear on their telephones, consumption of battery life, consumption of memory on their phones and voicemail, lost minutes, loss of value realized for the monies consumers paid to their carriers for the receipt of such calls, in the form of the diminished use, enjoyment, value, and utility of their telephone plans. Furthermore, Defendant or its agents acting on its behalf made the calls knowing they interfered with Plaintiffs' and the other Class members' use and enjoyment of, and the ability to access their phones, including the related data, voicemail, software, and hardware components.

5.      The TCPA was enacted to protect consumers from prerecorded phone calls like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiffs file this lawsuit seeking injunctive relief, requiring Defendant to cease all prerecorded telephone calling activities to telephones without first obtaining prior express written consent, as well as an

award of statutory damages to the members of the Class under the TCPA, costs, and reasonable attorney's fees.

## PARTIES

6. Plaintiff Harris is a natural person and resident of New York. She resides in Buffalo.

7. Plaintiff Cromie is a natural person and resident of New York. He resides in Liverpool.

8. Plaintiff Tutson is a natural person and resident of Texas. She resides in Houston.

9. Allstate is an insurance company in Illinois and is registered with the Illinois Department of Insurance. Defendant's principal place of business is located at 2775 Sanders Road, Northbrook Illinois 60062, which is located in this District.

10. The exact identity of Defendant's telemarketers who made the calls at issue herein on Defendant's behalf are unknown at this time. Plaintiffs anticipate potentially needing to amend this Complaint to add such marketers when Defendant eventually identifies them.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and is headquartered in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and the wrongful conduct giving rise to this case occurred in and/or emanated from this District.

**COMMON FACTUAL ALLEGATIONS**

13. In recent years, companies such as Allstate have turned to unsolicited telemarketing as a way to increase their customer base. Widespread telemarketing is a primary method by which Defendant recruits new customers.

14. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

15. In plain violation of this rule, Defendant fails to obtain any prior express written consent to make prerecorded calls to cellular and landline telephone numbers.

16. Prior to placing these prerecorded voice calls to consumers, Defendant failed to obtain express written consent as required by the TCPA.

17. At all times material to this Complaint, Defendant was and is fully aware that unsolicited telemarketing calls are being made to consumers' telephones through its own efforts and its agents.

18. Defendant knowingly made (and continues to make) unsolicited prerecorded telemarketing calls without the prior express written consent of the call recipients as well as calls to those on the national do not call registry. In so doing, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF CROMIE

19. Cromie is the ordinary and customary user of a cellphone number ending in 5279. This number is for Cromie's personal use and is not used for business purposes.

20. On December 30, 2020, Cromie received a call from the phone number 315-284-8931. The call featured an artificial or pre-recorded voice, specifically "avatar" or "soundboard" technology. This technology involves humans listening into a call and attempting to press computer buttons to generate a pre-recorded response that would be consistent with what a human operator may say. On information and belief, this call was placed to solicit the purchase of Allstate insurance products and services.

21. On the December 30, 2020 call, Cromie was presented with a prompt to press a button to put his telephone number on the internal do not call list. He did so.

22. Notwithstanding his clear instructions to be placed on the internal do not call list, Cromie received an identical avatar call on January 20, 2021 from caller ID 315-258-5496. Cromie again pressed the button to be added to the do not call list.

23. Once again, on January 26, 2021 Cromie received a call from caller ID 315-258-5542. Cromie again pressed the button to be added to the do not call list.

24. On January 30, 2021, Cromie received yet another identical avatar call, this time from 315-273-4374. Having "pressed the button" to be added to the internal do not call list 3 times in the past without success, Cromie decided to answer the avatar's questions. After doing so, he was transferred to an Allstate agent and was solicited to purchase Allstate products.

25. Cromie received another avatar call on February 1, 2021 from the number 315-291-6164, which like the rest was placed to solicit the purchase of an Allstate product or service. This time Cromie again tried to press the button to be placed on the do not call list.

26. Finally, on February 2, 2021, Cromie received an avatar call from 315-533-9245 and was ultimately transferred to an Allstate agent.

27. Cromie received a follow-up email on February 2, 2021 from the email address allstate@marketing01.email-allstate.com. The email was signed by Matthias Coy, who represented that he was Allstate "Licensed Staff" in Brooklyn, New York, and stated "We first discussed your insurance needs a couple of weeks ago, and I just wanted to follow-up to see if you have any questions".

28. During all times relevant, Cromie did not consent orally or in writing for Defendant to place prerecorded calls to him. Simply put, Defendant never obtained Cromie's prior written (or oral, for that matter) express consent to place any telephone calls to him using a prerecorded voice.

## FACTS SPECIFIC TO PLAINTIFF HARRIS

29. Harris is the ordinary and customary user of a cellphone number ending in 3589. This number is for Harris's personal use and is not used for business purposes.

30. On December 29, 2020, Harris received a call from the phone number 716-271-9049. Harris did not answer this call.

31. On January 13, 2021, Harris received another call from 716-271-9049. Harris answered this call. The call featured an artificial or pre-recorded voice, specifically "avatar" or "soundboard" technology. This technology involves humans listening into a call and attempting to press computer buttons to generate a pre-recorded response that would be consistent with what a human operator may say.

32. The avatar solicited Harris for the purchase of insurance products and stated that she would be receiving a follow-up call from Allstate.

6

33. Later that day, Harris received a follow-up call from Allstate from the number 800-255-7828, which is a number owned and controlled by Allstate.

34. During all times relevant, Harris did not consent orally or in writing for Defendant to place prerecorded calls to her. Simply put, Defendant never obtained Harris's prior written (or oral, for that matter) express consent to place any telephone calls to her using a prerecorded voice.

## FACTS SPECIFIC TO PLAINTIFF TUTSON

35. Tutson is the ordinary and customary user of a cellphone number ending in 5840. This number is for Tutson's personal use and is not used for business purposes.

36. On August 17, 2021, Tutson received a call from caller ID 920-547-6649. Like Cromie and Harris's calls, this call featured pre-recorded voice avatar technology. The avatar called "herself" Ashley and asked Tutson whether she wanted to reduce her car insurance bill. The avatar then told Tutson someone will be placing a follow-up call to her.

37. Later that day, Tutson received a call from 832-772-3182, which was a live call placed by Jose Rischmagui, who told Tutson he was an Allstate insurance agent in Houston and was "returning her call". Thus, the earlier avatar call placed on August 17th was placed on Allstate's behalf and for its benefit.

38. By making unauthorized prerecorded telephone calls as alleged herein, Defendant has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiffs' use and enjoyment of their phones, interfered with their use and enjoyment of their voicemail, took up space in their voicemail memory and required them time to listen to, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiffs' phones. In the present case, a

consumer could be subjected to many unsolicited prerecorded telephone calls as the Defendant do not take care to ensure that the recipients of their prerecorded calls have given their prior express written consent to be called.

39. In order to redress these injuries, Plaintiffs, on behalf of themselves and the class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded telephone calls to telephones without prior express written consent.

40. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unsolicited prerecorded telephone calling activities in the absence of prior express written consent, and an award of statutory damages to the class members to be paid into a common fund for the benefit of the Class, together with costs and reasonable attorney's fees to be paid from any such common fund.

## CLASS ALLEGATIONS

41. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seeks certification of the following Class:

> **Prerecorded No Consent Class:** All persons in the United States from four years prior to the filing of this action through the date the date notice is sent to the Class who (1) received a telemarketing call made by Allstate or one of Allstate's telemarketing agents, (2) on the person's telephone, (3) using an artificial or prerecorded voice, (4) for the purpose of soliciting the sale of an Allstate product or service, and (5) for whom Defendant claims prior express written consent was obtained in the same manner as Defendant claims prior express written consent was obtained to call the Plaintiffs.

42. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

8

have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

43. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant placed prerecorded telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Class can be easily identified through Defendant's records.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a) whether Defendant's conduct constitutes a violation of the TCPA;

    (b) whether Defendant systematically made telephone calls to members of the Prerecorded No Consent Class without first obtaining prior express written consent to make the calls;

    (c) whether Defendant utilized a prerecorded voice to make its calls to members of the Prerecorded No Consent Class;

    (d) whether Defendant made prerecorded telephone calls to members of the Prerecorded No Consent Class without first obtaining prior express written consent to make the calls;

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f) whether Defendant obtained prior express written consent to contact any class members.

45. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

46. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiffs' challenges of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
**(Violations of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiffs and the Prerecorded No Consent Class)**

47. Plaintiffs incorporate the foregoing factual allegations as if fully set forth herein.

48. Defendant, or its telemarketing agents acting on Defendant's behalf and for its benefit, made telephone calls using an artificial or pre-recorded voice to telephone numbers belonging to Plaintiffs and other members of the Prerecorded No Consent Class without first obtaining prior express written consent to receive such calls. Written consent is required, yet Defendant failed to obtain written or oral consent.

49. The prerecorded voice calls actually played a prerecorded voice on Plaintiffs' telephones.

50. By making the unsolicited telephone calls to Plaintiff and the Prerecorded No Consent Class members' telephones without their prior express written consent, and by utilizing a prerecorded voice to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

51. As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Prerecorded No Consent Class are each entitled a minimum of Five Hundred Dollars ($500.00) in damages for each such violation of the TCPA.

52. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Prerecorded No Consent Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

2. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiffs and the Class Members;

3. An order declaring that Defendant's actions, as set out above, violate the TCPA;

4. A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6. An order requiring Defendant to identify any third-party involved in the pre-recorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7. An injunction requiring Defendant to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Class;

8. An injunction prohibiting Defendant from using, or contracting the use of, a pre-recorded voice without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

11. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEVEN CROMIE, TANISHA TUTSON, and RUTHY HARRIS**, individually and on behalf of all others similarly situated individuals,

Dated: July 29, 2022

By:   /s/ Steven L. Woodrow
One of Plaintiffs' Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809

*Attorneys for Plaintiffs and the Class*